## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NOVELL, INC., | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 04-11110 REK** |
| v. | ) | |
| DIGI-FI, LLC | ) | **MOTION OF DEFENDANT DIGIFI, LLC TO DISMISS OR TO TRANSFER VENUE** |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT

### RELEVANT FACTS

On or about January 16, 2002, Defendant Digifi, LLC, an Ohio limited liability company ("Digifi"), executed a written contract[1] with Cambridge Technology Partners ("Cambridge"), which allegedly was at the time a trade name for an operating unit of the Plaintiff in this matter, Novell, Inc.[2] This contract was entered into in Columbus, Ohio.[3]

At the time of the execution of the Master Agreement, Cambridge was aware that Digifi was a newly formed limited liability company which had no development capital or other funding available to pay Cambridge for any services it chose to perform under the agreement.[4] The parties thus agreed that Cambridge would perform software development services for Digifi on an "if come" basis, with payment by Digifi obviously being made only if and after Digifi obtained necessary development funding.[5] Digifi's promise to pay Cambridge under the Master

---

[1] The "Master Agreement" attached as Exhibit "A" to the Complaint filed in this case.

[2] Complaint, ¶2.

[3] Affidavit of Bruce Niswander ("Niswander Aff.,"), ¶10.

[4] Niswander Aff., ¶¶13, 14, 16.

[5] *Id.*, ¶¶14, 15.

Agreement was thus at all times contingent upon its ability to obtain funding. Digifi has never obtained funding, however.[6]

Accordingly, Digifi has never conducted any business in Ohio, Massachusetts, or elsewhere. Digifi does not maintain, and never has maintained, an office located in the Commonwealth of Massachusetts, and is not registered to do business there.[7] Digifi does not have, and never has had, any employees, agents, or directors who reside or are located in the Commonwealth of Massachusetts.[8] Digifi does not have a telephone listing or a customer base in Massachusetts, nor has it ever solicited customers in Massachusetts. Indeed, Digifi has never had any customers at all.[9]

Although Cambridge's main office is apparently located in Cambridge, Massachusetts, the company has regional offices in Ohio and elsewhere across the country. The relationship between Cambridge and Digifi arose out of a number of sales discussions that Digifi's Bruce Niswander had with certain employees of Cambridge's Columbus, Ohio office.[10] While negotiating this agreement, Digifi and its representatives were thus in contact only with representatives from Cambridge's Ohio office.[11] None of Digifi's executives ever traveled to Massachusetts to meet with Cambridge executives, or for any other purpose related to the relationship between Digifi and Cambridge.[12] All of the meetings between the parties'

---

[6] *Id.*, ¶5.

[7] *Id.*, ¶¶6, 7.

[8] *Id.*, ¶9.

[9] *Id.*, ¶8.

[10] *Id.*, ¶12.

[11] *Id.*, ¶17.

[12] *Id.*, ¶ 18.

representatives relating to development of the e-PIN concept took place at the offices of either Cambridge or Digifi in Columbus, Ohio.[13]

Furthermore, all of the software development and design work performed by Cambridge under the agreement was done in Ohio, and not in Massachusetts.[14]  Cambridge employees from outside of Ohio (none of whom were located in Massachusetts) traveled to Cambridge's Columbus, Ohio offices to perform their work.[15]  Indeed, the invoices attached to the Complaint demonstrate that a total of $63,137.18 in travel, lodging and meal expenses were charged to Digifi by Cambridge in order to have Cambridge's employees/developers perform their work in Columbus, Ohio.[16]  Digifi is not aware of any activity by Cambridge employees relating to the work which is the subject of the Complaint which occurred in the Commonwealth of Massachusetts.[17]

Finally, invoices for payment under the Master Agreement were issued by Cambridge from its offices in Pasadena, California, and payments were to be remitted to that California office.[18]  The contract contained no forum selection clause, and the only thing that links the transaction to Massachusetts is the contract's choice of law clause.[19]

---

[13] *Id.*, ¶¶19, 20.

[14] *Id.*, ¶¶21, 25.

[15] *Id.*, ¶¶22-24.

[16] *Id.*, ¶24; Complaint, Exhibits E, F, and G.

[17] *Id.*, ¶25.

[18] *See* Complaint, Exs. C, D, E, F, and G.

[19] Complaint, ¶7, and Ex. A, ¶19.

## LAW AND ARGUMENT

I. **Because Defendant is not subject to personal jurisdiction in Massachusetts, this court should grant Defendant's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2).**

Under First Circuit authority, the plaintiff bears the burden of establishing that the chosen forum may exercise personal jurisdiction over the defendant. *See e.g., Wildfire Communications, Inc.* v. *Grapevine, Inc.*, 2001 U.S. Dist. LEXIS 18238, *6 (D. Mass. 2001) (citing *Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 46 F.3d 138, 144–45 (1st Cir. 1995). Furthermore, courts in the First Circuit use the prima facie standard for analyzing a motion to dismiss for want of personal jurisdiction. *See id.* at *6–7. The prima facie standard requires courts to consider "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Foster-Miller*, 46 F.3d at 145. In addition, the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce "evidence of specific facts." *Id.* (quoting *Boit* v. *Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)).

The United States District Court for the District of Massachusetts, following First Circuit case law, has recognized that a personal jurisdiction analysis is a two step process. *See New England Welding Contractor's, Inc.*, v. *Hydra-Machinery Sales, Inc.*, 704 F. Supp. 315, 316 (D. Mass.1989). First, "the [c]ourt must determine whether the plaintiff's evidence satisfies the [Massachusetts] long-arm statute." *Id.* Second, a "plaintiff must establish that the maintenance of the action against the defendant does not offend due process. *Id.* (citing *Ealing Corp.* v. *Harrods, Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986).

Because Plaintiff in this case can establish neither (1) that the Defendant fell within the provisions of the Massachusetts long-arm statute, nor (2) that maintaining the current action

would not offend Defendant's due process right, this Court has two independent grounds on which to hold that it lacks personal jurisdiction over Defendant Digifi.

**A.   Because Defendant does not fall within the provisions of the Massachusetts long-arm statute, Defendant is not subject to personal jurisdiction in Massachusetts.**

Because the cause of action in the case at bar is a non-insurance, contract claim regarding the supply of services, only two provisions of the Massachusetts long arm statute could apply. *Mass. Gen. Laws.* C. 223A, § 3. These provisions provide that Massachusetts' courts may exercise personal jurisdiction over a person who (a) transacts any business in Massachusetts, or (b) contracts to supply services or things to Massachusetts. Since Defendant Digifi entered the contract with Cambridge Tech as a buyer of services, it is not subject to personal jurisdiction under §3(b) of the long arm statute. *Mass. Gen. Laws.* C. 223A, § 3(b). Thus, the only remaining inquiry is whether Defendant Digifi was "transacting any business" in Massachusetts.

The First Circuit has read this provision of the long-arm statute as "designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." *Lyle Richards Int'l, Ltd.* v. *Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir. 1997). Thus, the long-arm statute "does not confer personal jurisdiction where the nonresident's contacts with Massachusetts were 'purely incidental' to the business transactions." *Aub* v. *Technicolor Entertainment Services*, 224 F. Supp. 2d 371, 373 (D. Mass. 2002) (citing *Lyle Richard*, 132 F.3d at 113). Furthermore, in determining whether a nonresident deliberately contacted the forum under this provision, Massachusetts courts are less willing to impose personal jurisdiction on a nonresident buyer as opposed to a nonresident seller. *Aub*, 224 F. Supp. 2d at 373–74; *see also New Hampshire Ins. Guar. Ass'n.* v. *Markem Corp.*, 676 N.E.2d 809, 813 (Mass. 1997) (noting that a seller is more likely to have engaged in the sort of deliberate contacts that qualify

5

as "transacting business" under the long-arm statute). The Massachusetts Supreme Judicial Court has also noted that interpreting 3(a) to confer jurisdiction on every buyer of Massachusetts goods or services would bring about "the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 389 N.E.2d 76, 81 n.14 (Mass. 1979); *see also Markem*, 676 N.E.2d at 812. First Circuit Courts have applied these concepts in cases that are directly analogous to the case at bar.

In *Aub*, for example, the United States District Court for the District of Massachusetts granted the defendant's motion to dismiss for lack of personal jurisdiction under section 3(a) of the Massachusetts long-arm statute. *Aub*, 224 F. Supp. 2d at 372. The court noted from the outset that the plaintiff was a resident of Massachusetts who, at all relevant times, also maintained a home in California. *Id.* The court further noted that the defendant was an out-of-state corporation that maintained no office, telephone listing, customer base, or customer solicitation in Massachusetts. *Id.* The plaintiff and defendant began to negotiate an agreement for the defendant to purchase consulting services from the plaintiff. *Id.* at 372. During these negotiations, the parties never physically met in Massachusetts. *Id.* Furthermore, the defendant's only contact with the forum was through a series of telephone calls, letters, and payments to the plaintiff while she was located in Massachusetts. *Id.* at 372–73.

The court concluded that the contacts between the parties in *Aub* were "too fortuitous and incidental to fall within the reach of the Massachusetts long-arm statute." *Id.* at 374. In arriving at this conclusion, the court noted six factors that made personal jurisdiction over the defendant improper. These included: (1) that the business relationship between the parties grew out of a contract that was originally made out of state, (2) that none of defendant's executives ever

6

traveled to Massachusetts, (3) that all of the face to face meetings between the parties took place outside of Massachusetts, (4) that the defendant's reasons for hiring the plaintiff had nothing to do with her location in Massachusetts, (5) that the plaintiff's services were not localized to Massachusetts, and (6) that it did not matter to the defendant whether any of the work was done in Massachusetts. *Id.* Thus, taking these factors into account, the court concluded that the long-distance communications between the parties while the plaintiff was located in Massachusetts were not enough to amount to transacting business under the Massachusetts long-arm statute. *Id.*

The business relationship in the case at bar is analogous to the business relationship in *Aub*. In the instant case, the business relationship between Digifi, a nonresident buyer of services, and Cambridge, a service provider, grew out of contacts, and a contract, made in Ohio.[20] None of Digifi's executives ever traveled to Massachusetts, and all of the meetings between Digifi and Cambridge took place outside of Massachusetts.[21] Furthermore, defendant Digifi did not hire plaintiff based on its Massachusetts location. In fact, Digifi retained Cambridge based on its relationship with the Cambridge employees at its regional branch location in Ohio.[22] Finally, unlike the defendant in *Aub*, Digifi neither made payments nor engaged in long distance communications with Massachusetts to further the contractual relationship at issue.[23] Thus, this court should hold that Digifi did not "transact business" as that concept is understood according to relevant case law interpreting section 3(a) of the Massachusetts long-arm statute.

---

[20] Niswander Aff., ¶10.

[21] *Id.*, ¶¶17-20.

[22] *Id.*, ¶12.

[23] *Id.*, ¶¶19-21.

In a similar case, *Jana Brands, Inc.* v. *Nexifm, Inc.*, 2003 U.S. Dist. LEXIS 862 (D. Mass 2003), the Federal District Court for the District of Massachusetts held that a nonresident buyer was not subject to personal jurisdiction in Massachusetts under the constitutional boundaries of the state long-arm statute. *Id.* at 7. Interpreting section 3(a) of the long arm statute, the Court stated that the defendant's contacts with Massachusetts were merely fortuitous and did not rise the level required to confer personal jurisdiction. *Id.* at 6. The court noted that the only contacts that the defendant had with the forum were through telephone conversations with the plaintiff's agent who was located in Massachusetts and through the payments that were sent to Massachusetts. *Id.* at 6–7. Furthermore, the court noted that all other relevant facts occurred outside of Massachusetts, including the initial negotiations as well as contract performance. *Id.*, at 7 (noting that the negotiations began in Washington and that the goods were to be shipped from California).

The case at bar is analogous to the *Jana Brands* case. In the case at bar, the parties began negotiations in Ohio, and all of the services under the contractual agreement were to be performed in Ohio. Furthermore, Digifi made no contacts with Cambridge's Massachusetts office. Digifi did not send any payments to Cambridge's Massachusetts office, of course, and it was expressly instructed to make all payments to Pasadena, California.[24] Thus, this case presents an even more compelling factual situation than *Jana Brands* to grant Digifi's motion to dismiss for lack of personal jurisdiction.

Under the relevant case law, Digifi, a nonresident buyer, did not transact business under section 3(a) of the Massachusetts long-arm statute as that term has been interpreted by First Circuit courts. Thus, this court should grant defendant Digifi's motion to dismiss for lack of

---

[24] Complaint, Exs., E – G.

personal jurisdiction. To grant this motion would comport with the Massachusetts' policy to avoid "the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." *Good Hope Indus.*, 389 N.E.2d at 81 n.14.

**B.    Because Defendant has not established minimum contacts with Massachusetts, it would violate due process to allow Defendant to be hailed into Massachusetts' court.**

The second inquiry that this Court should make under the personal jurisdiction analysis is whether allowing the action to go forward in the chosen forum would offend the defendant's constitutional due process protections. Constitutional due process requires that a defendant have certain "minimum contacts" with the forum state so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co.* v. *State of Washington*, 326 U.S. 310, 316 (1945).

The Supreme Court, in applying the minimum contacts test from *International Shoe*, has recognized that the "Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties or relations." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 471–72. Furthermore, in a single contract case, the First Circuit employs the "contract plus" analysis, concluding that "where an out of state party contracts with a resident of the forum state, that contract *alone* does not establish sufficient minimum contacts. *Beaver Builders* v. *Schnip Building*, 622 F. Supp. 1051, 1055 (citing *Burger King*, 471 U.S. 462). Utilizing the contract plus analysis, a Court may consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing [all of which] must be evaluated in determining whether the defendant purposefully established minimum contacts

with the forum." *Burger King*, 471 U.S. at 478–79. First Circuit case law has further developed these notions by applying the minimum contacts analysis.

For example, in *New England Welding Contractors*, the court held that the plaintiff did not establish that personal jurisdiction existed over the defendant. 704 F. Supp. at 317. In that case, the plaintiff, a Massachusetts corporation, entered into a contract with defendant, a South Carolina corporation, to purchase a used piece of equipment. *Id.* at 315. Although it was unclear which party contacted the other initially, it was undisputed that telephone calls and correspondence exchanges occurred regularly between the two parties while in their respective states. *Id.* at 316. Also, in concluding that it could not maintain personal jurisdiction over the defendant, the court relied on five facts. These included that (1) the defendant was not registered to do business in Massachusetts, (2) the defendant did not maintain an office or sales force in Massachusetts, (3) the defendant never entered into any other transaction in Massachusetts, (4) the defendant did not physically enter Massachusetts in the transaction, and (5) all meetings between the parties occurred outside of Massachusetts. *Id.* at 316–17. Thus, even though the defendant contacted the plaintiff's home office in Massachusetts through telephone calls and correspondence, the court held that this amount of contact with the forum state was not sufficient to establish personal jurisdiction over the defendant. *Id.* at 317.

In the case at bar, there was even less contact between the Defendant and Cambridge's Massachusetts office than there was between the parties in *New England Welding Contractors*. Defendant Digifi is not registered to do business in Massachusetts and does not maintain an office or sales force in Massachusetts.[25]   Digifi has not entered into any transactions in Massachusetts, and none of the agents of Digifi physically entered Massachusetts for the purpose

---

[25] Niswander Aff., ¶¶7, 9.

of furthering the transaction.[26]  All of the meetings between the parties occurred outside of Massachusetts in the state of Ohio.[27]  Even more compelling is the fact that nearly all of the correspondence and communications in the case at bar occurred between Digifi's representatives in Ohio and Cambridge's regional office, also located in Ohio.[28]  Thus, unlike the defendant in *New England Welding Contractors*, the Defendant in the case at bar was not in constant, direct communication with Cambridge's Massachusetts office.  Accordingly, this court should hold that Plaintiff has failed to establish a prima facie showing of personal jurisdiction over Defendant.

In another contract case, *A-Connoisseur Transportation Corp.*, v. *Celebrity Coach, Inc.*, 742 F. Supp. 39 (D. Mass 1990), the United States District Court for the District of Massachusetts granted the defendant's 12(b)(2) motion to dismiss.  *Id.* at 43.  In that case, the plaintiff, a Massachusetts corporation, and the defendant, a Pennsylvania corporation, entered into an agreement, providing that plaintiff would buy a customized van from defendant.  *Id.* at 40–41.  It was unclear as to which party initiated contact with the other; however, it was undisputed that, before the contract was signed, the defendant drove the van to Massachusetts for demonstration purposes.  *Id.* at 41.  Furthermore, the court found that the allegation that the contract was signed in Massachusetts was unrefuted and that the defendant, at some point after the contract was signed, dispatched an employee to Massachusetts to retrieve the van for repairs. *Id.*

The court in *A-Connoisseur Transportation*, granted defendant's 12(b)(2) motion based on three factors: (1) the defendant did not come to Massachusetts until it received a specific request —accompanied by a $500 deposit—from plaintiff, (2) even if the contract was signed in

---

[26] *Id.*, ¶¶6, 8, 20.

[27] *Id.*, ¶¶21, 22.

[28] Id., ¶¶19, 23.

Massachusetts, the signing alone is not legally sufficient to satisfy a minimum contacts analysis, and (3) even though the defendant went to Massachusetts once to retrieve the van for repairs, all of the repairs took place in Pennsylvania. *Id.* at 43. Thus, because these factors were not sufficient to establish minimum contacts with the forum state, the court held that it lacked personal jurisdiction over the defendant. *Id.*

Again, the case at bar presents an even more compelling factual situation to hold that Defendant is not subject to personal jurisdiction in Massachusetts. Unlike the defendant in *A-Connoisseur Transportation*, none of Digifi's agents were ever physically present in Massachusetts for the purpose of furthering this transaction. Most of the communications, meetings, and negotiations occurred in Ohio, through Cambridge Tech's regional Ohio office. Thus, the lack of physical presence as well as a lack of communications to Cambridge Tech's Massachusetts office creates a more compelling case than *A-Connoisseur* to hold that personal jurisdiction over the Defendant is lacking here.

Finally, the only thing that links Digifi to Massachusetts is the choice of law provision contained within the Master Agreement. Yet this provision, standing alone, is insufficient to satisfy the minimum contacts analysis. This is clear from relevant Supreme Court case law. For example, in *Burger King*, the Supreme Court concluded that a choice of law provision "standing alone would be insufficient to confer jurisdiction . . . ." *Id.*, 471 U.S. at 482. Because the choice of law provision in the contract at issue is stands alone as the only contact of the Defendant with Massachusetts, it would violate due process to hail Defendant into court in Massachusetts based solely on that provision of the contract.

For all the foregoing reasons, this Court should grant Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

II.     **Because Defendant was not subject to personal jurisdiction in this District at the time the action was commenced, this court must also dismiss this action on the ground of improper venue, pursuant to Fed. R. Civ. P. Rule 12(b)(3).**

Where jurisdiction in a civil action is based only on diversity of citizenship, venue is governed by 28 U.S.C. §1391(a), which provides that an action may only be brought in

> (1)     a judicial district where any defendant resides, if all defendants reside in the same State,

> (2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

> (3)     a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

When venue is challenged on a motion to dismiss, the plaintiff has the burden to present sufficient facts showing venue is appropriate. *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir.1979). The procedural analysis applied in determining a challenge to venue follows the procedure for analysis employed in a motion under Rule 12(b)(2). *Global Health Alternatives, Inc. v. Ellon U.S.A., Inc.*, 1999 WL 33117099, at *1 (D.Me. March 24, 1999) (citing *M.K.C. Equip. Co. v. M.A.I.L.Code, Inc.*, 843 F.Supp. 679, 682-83 (D.Kan.1994)).

For the reasons set forth in the preceding section of this Memorandum, Cambridge cannot meet its burden here. Plaintiff cannot meet either subpart (1) or (2) of §1391(a), because the sole Defendant does not reside in this District,[29] and no part of the events or omissions giving rise to the claims made in the Complaint occurred in this District.[30] Moreover, the Defendant was not subject to personal jurisdiction in this District at the time

---

[29] Niswander Aff., ¶15.

[30] *Id.*, ¶¶10-12, 17-23.

the Complaint was filed, and thus Plaintiff cannot satisfy §1391(a)(3) either. This catch-all provision is not applicable to provide venue in this District in any event, because there does exist "a district in which the action may otherwise be brought," i.e., in the Southern District of Ohio, where this Defendant resides.

Venue is not proper in this District. Accordingly, pursuant to Fed. R. Civ. P. Rule 12(b)(3) and 28 U.S.C. §1406,[31] the Complaint must be dismissed.

**III.    Even if a Massachusetts court is able to exercise personal jurisdiction over Defendant, this court should transfer venue to Ohio because all of the business was conducted in that forum, and it would be more convenient for the parties and the witnesses to hold this action in the Ohio forum.**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district where it originally might have been brought, for the "convenience of parties and witnesses," and "in the interest of justice." *Dopp* v. *Teachers Insurance and Annuity Association of America*, 1992 U.S. Dist. LEXIS 6833, 5–6 (D.P.R. 1992) (quoting 28 U.S.C. §1404(a)). In expounding on this provision, the First Circuit Court of Appeals has listed relevant factors that a district court should consider in determining whether an action should be transferred. These factors include (1) the convenience of the parties and witnesses, (2) the order in which jurisdiction was obtained by the district court, (3) the availability of documents, and (4) the possibility of consolidation. *Cianbro Corp.* v. *Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). Employing this analysis, First Circuit courts have granted motions to transfer in cases that are analogous to the case at bar.

---

[31]  28 U.S.C. §1406 provides: "(a) The district court of a district in which is filed a case laying venue in the wrong division or district **shall dismiss,** or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (Emphasis added.)

For example, in *Dopp*, the plaintiff originally brought a diversity action for breach of contract in the District Court of Puerto Rico. 1992 U.S. Dist. LEXIS 6833, 1 (1992). The defendants moved to have the action transferred to the Southern District of New York. *Id*. Applying the First Circuit four factor analysis, the court granted the defendants' motion to transfer, pursuant to 28 U.S.C. § 1404(a). *Id*. at 1–2. The court noted the relevant factors that guided its decision. First, the court noted that all of the parties except one were within commuting distance of New York. *Id*. at 6–7. Second, the witnesses and documents that were relevant to the action were located closer to the New York Forum. *Id*. at 8–9. Third, the court noted that the plaintiff was not prejudiced by such a transfer. *Id*. at 9–11.

In the case at bar, all of the relevant negotiations and meetings regarding the transaction at issue took place in the state of Ohio, and all witnesses and relevant documents are currently located in the state of Ohio. Furthermore, plaintiff has branch offices in Ohio, making the requested forum easily accessible. Finally, plaintiff may argue that there may be some hardship in retaining his Massachusetts counsel should the forum change to Ohio. The *Dopp* court addressed a similar issue noting that a plaintiff does not necessarily lose its counsel from a change of forum because the counsel can simply apply for pro hac vice status. *Dopp*, 1992 U.S. Dist. LEXIS at 11–12. Thus, plaintiff will incur no hardship regarding the retention of counsel if this action is transferred. Because the case at bar is analogous to *Dopp*, this court should similarly grant Defendant's motion for change of venue.

Because all witnesses, documents, and parties are more readily available in an Ohio forum, and because transferring this action to Ohio will place little burden on the Plaintiff, this court should grant Defendant's motion and transfer this action to Ohio, pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

For all the foregoing reasons, Defendant urges this Court to dismiss the Plaintiffs' Complaint for lack of personal jurisdiction and for improper venue. In the alternative, and in the interest of justice pursuant to 28 U.S.C. §1404(a) and/or §1406, Defendant submits that this matter should be transferred to the United States District Court for the Southern District of Ohio, Eastern Division, which is the more appropriate venue for the convenience of parties and witnesses.

Respectfully submitted;

Floyd H. Anderson *BBO# 082940*
Law Offices of Floyd H. Anderson, P.C.
170 Milk Street
Boston, MA 02109
(617) 542-9910 / (617) 423-4929 *facsimile*
Local Attorney for Defendant

Of Counsel, *pro hac vice*:

Donell R. Grubbs, Esq.
BUCKLEY KING, LPA
One Columbus, Suite 1300
10 West Broad Street
Columbus, Ohio 43215-3419
grubbs@bucklaw.com
(614) 461-5600 / (614) 461-5630 *facsimile*

H:\C1.\23308\001\Dismiss.Mot.doc

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 9/7/04    BWF

16