LEXSEE

**WILDFIRE COMMUNICATIONS, INC., Plaintiff v. GRAPEVINE, INC., d/b/a WILDFIRE INTERNET SERVICES, Defendant**

**CIVIL ACTION NO. 00-CV-12004-GAO**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

*2001 U.S. Dist. LEXIS 18238*

**September 28, 2001, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss complaint for lack of personal jurisdiction was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff Massachusetts company brought an action against defendant Illinois company alleging trademark infringement under *15 U.S.C.S. § § 1114*(1), 1125(a), (c), (d), *Mass. Gen. Laws ch. 110B, § 12*, ch. 93A § § 2, 11, unfair competition, and breach of contract. The Illinois company moved to dismiss the breach of contract claim under *Fed. R. Civ. P. 12(b)(6)* and to dismiss the case, or to transfer venue for lack of personal jurisdiction.

**OVERVIEW:** The complaint alleged the Illinois company breached one or more provisions of the contract, and incorporated the contract, without stating any facts as to the alleged breach. It was insufficient under *Fed. R. Civ. P. 8*. The court found the Massachusetts company failed to prove sufficient minimum contacts by the Illinois company for personal jurisdiction. The Illinois company had (1) three web pages accessible from Massachusetts, (2) a contract with a Massachusetts company for the sale of a domain name, governed by Massachusetts law but not containing a forum-selection clause; and (3) a one-time, unsuccessful solicitation of a Massachusetts company for an internet advertisement. There was no evidence of Massachusetts customers or regular solicitation of business in Massachusetts. The Illinois company could only provide internet service to customers in an Illinois area code. While Massachusetts residents could purchase the Illinois company's services off of one web page or utilize

free services of another page, the existence of the pages alone, without any evidence of actual purchases by Massachusetts customers or direct solicitation of Massachusetts customers, was insufficient.

**OUTCOME:** The Illinois company's motion to dismiss the contract claim for failure to state a claim was granted. The Illinois company's motion to dismiss the complaint for lack of personal jurisdiction was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > InterpretationCivil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] In evaluating a motion to dismiss, the court must take as true all well-pleaded facts and draw all reasonable inferences favorable to the complainant. However, the standard that the complaint include a short and plain statement of the claim showing that the pleader is entitled to relief, *Fed. R. Civ. P. 8(a)(2)*, is not toothless.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN2] *Fed. R. Civ. P. 12(b)(6)* allows the plaintiff a highly deferential reading of the complaint, however, the rule does not entitle a plaintiff to rest on subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts.

**Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action**

[HN3] The mere legal conclusion that a breach of contract has occurred does not satisfy the *Fed. R. Civ. P. 8* requirement of a short and plain statement of the claim.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

[HN4] A plaintiff bears the burden of demonstrating that defendant's conduct satisfies the state's long-arm statute and that the exercise of personal jurisdiction in the case comports with the strictures of the United States Constitution.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

[HN5] A court will use the prima facie standard for analyzing a motion to dismiss for want of personal jurisdiction. Under this standard, the court will consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction. The plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction**

[HN6] See *Mass. Gen. Laws ch. 223A, § 3.*

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits**

[HN7] Constitutional due process requires that a defendant have certain minimum contacts with the forum state before personal jurisdiction may be recognized so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The three requirements of this minimum contacts test are: (1) relatedness; (2) purposeful availment; and (3) reasonableness. A plaintiff must satisfy all three prongs of this test to meet the due process requirements.

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits**

[HN8] Under the three-part minimum contacts analysis for personal jurisdiction, (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities; (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) the exercise of jurisdiction must, in light of several factors, be reasonable. The purposeful availment prong of the test

focuses on the deliberateness of the defendant's contacts with the forum state and requires that the contracts be voluntary, and foreseeable such that the defendant could reasonably be able to anticipate being haled into court in the forum state.

**COUNSEL:** For WILDFIRE COMMUNICATIONS, INC., Plaintiff: Paul J. Hayes, Paul J. Cronin, Kevin Gannon, Eugene A. Feher, Weingarten, Schurgin, Gagnebin & Hayes, Robert R. Gilman, Weingarten, Schurgin, Gagnebin & Hayes LLP, Boston, MA.

For GRAPEVINE, INC., Defendant: Anthony A. Froio, Robins, Kaplan, Miller & Ciresi, Boston, MA.

For GRAPEVINE, INC., Defendant: Todd Hendrickson, Hendrickson & Glover, L.C., Clayton, MI.

**JUDGES:** George A. O'Toole, Jr., DISTRICT JUDGE.

**OPINIONBY:** George A. O'Toole, Jr.

**OPINION:**

MEMORANDUM AND ORDER

September 28, 2001

O'TOOLE, D.J.

The plaintiff, Wildfire Communications, Inc. ("Wildfire"), a Delaware corporation with its principal place of business in Lexington, Massachusetts, originally brought this action in September 2000 alleging that the defendant, Grapevine, Inc., d/b/a/ Wildfire Internet Services ("Grapevine"), an Illinois corporation with its principal place of business in Granite City, Illinois, infringed upon plaintiff's trademark in violation of *15 U.S.C. § 1114*(1), *15 U.S.C. § § 1125*(a), (c), (d), [*2] *Mass. Gen. Laws ch.110B, § 12, Mass. Gen. Laws ch. 93A § § 2* and 11, and the common law. The plaintiff further alleged that the defendant engaged in unfair competition under the common law. Grapevine moved to dismiss the Complaint, or in the alternative to transfer venue, on the ground that this Court does not have personal jurisdiction.

In February 2001, the plaintiff filed an Amended Complaint adding a claim for breach of a contract between the plaintiff and the defendant for the sale of the domain name "wildfire.net," which the parties signed in 1996. Grapevine moved to dismiss the breach of contract claim under *Fed. R. Civ. P. 12(b)(6)*. This motion is GRANTED. Grapevine's motion to dismiss the Amended Complaint under *Fed. R. Civ. P. 12(b)(2)* for lack of personal jurisdiction is also GRANTED. n1

n1 The defendant's motion for leave to file a reply brief to plaintiff's opposition to defendant's motion to dismiss is GRANTED. The plaintiff's motion to strike the supplemental affidavit of George H. Sykes, Jr. is DENIED.

### [*3] I. Background

Wildfire develops, manufactures, markets and sells telecommunications, telephony, Internet and computer-related goods and services, including computer hardware and software for use in communications management and control. The plaintiff markets and sells its goods and services under its trademark "Wildfire," as well as the name "Wildfire Communications, Inc." in connection with its company and its goods and services. The plaintiff has used both names since at least as early as 1994. Am. Compl. PP 4, 5.

Grapevine markets and sells Internet services such as World Wide Web site developing and hosting, and Internet applications, products, and services. Grapevine markets these services on the Internet under the domain names "wildfire.net" and "wildfireinternet.com." Am. Compl. P 13. Grapevine operates as an Internet Service Provider ("ISP") under the name Wildfire, providing local ISP services exclusively to the 618 area code in southern Illinois. Grapevine cannot provide this service outside of the 618 area code. Sykes Aff. PP 4-6. In August 1995, Grapevine contacted Wildfire via e-mail in an effort to market defendant's internet "business card" product to the plaintiff [*4] for $ 14.95/month. Plaintiff did not purchase the business card product. Sykes Dep. at 109-12.

In 1996 the plaintiff offered to purchase the domain name "wildfire.net" from the defendant for $ 10,000. The parties signed a contract to that effect on or about October 17, 1996. Compl. Ex. D.

Grapevine owns and operates three websites, which are accessible to anyone with Internet access anywhere in the world. The three websites are: Wildfire Internet, WakeUpMoney, and GolfTracker. The services provided at the Wildfire Internet site are described above. WakeUpMoney is a software development and Internet implementation product that facilitates e-commerce for Grapevine customers. GolfTracker is free, server-based software, which Grapevine placed in the public domain and which allows golfers to track their handicaps and scores. Supplemental Affidavit of George H. Sykes, President and CEO of Grapevine PP 3, 4, 7, 9.

### II. Motion to Dismiss under *Fed.R.Civ.P. 12(b)(6)*

#### A. Standard of Review

[HN1] In evaluating a motion to dismiss, the Court must take as true all well-pleaded facts and draw all reasonable inferences favorable to the complainant. See *Papasan v. Allain, 478 U.S. 265, 283, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986);* [*5] *Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).* However, the standard that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," *Fed. R. Civ. P. 8(a)(2),* is not toothless. See *Burnett v. Grattan, 468 U.S. 42, 50-51 n.13, 82 L. Ed. 2d 36, 104 S. Ct. 2924 (1984)* (stating that an injured person "must look ahead to the responsibilities that immediately follow filing a complaint . . . [and] be prepared to withstand various responses, such as a motion to dismiss," and noting that "although the pleading and amendment of pleadings rules in federal court are to be liberally construed, the administration of justice is not well served by the filing of premature, hastily drawn complaints"). [HN2] Rule 12(b)(6) allows the plaintiff a highly deferential reading of the complaint, however, the rule "does not entitle a plaintiff to rest on 'subjective characterizations' or conclusory descriptions of 'a general scenario which could be dominated by unpleaded facts.'" *Correa-Marinez, 903 F.2d at 53* (quoting *Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982).* [*6]

#### B. Discussion

In this case, the plaintiff has not met the burden required by the rules of notice pleading, and accordingly the motion to dismiss Count IX of the Amended Complaint is granted. The breach of contract claim alleges that defendant "has breached one or more provisions" of the contract, and simply incorporates the contract into the Amended Complaint as Exhibit D. The plaintiff does not state any facts regarding the alleged breach. [HN3] The mere legal conclusion that a breach has occurred does not satisfy the Rule 8 requirement of a short and plain statement of the claim.

### III. Motion to Dismiss under *Fed. R. Civ. P. 12(b)(2)*: Specific Personal Jurisdiction

#### A. Standard of Review

[HN4] The plaintiff bears the burden of demonstrating that defendant's conduct satisfies the Massachusetts Long-Arm statute and that the exercise of personal jurisdiction in this case "comports with the strictures of the Constitution." *Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144-45 (1st Cir. 1995)* (quoting *Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994))* (other citations omitted). [HN5] The Court will use the prima facie standard for analyzing [*7] a motion to dismiss for want of personal jurisdiction as outlined by the First Circuit. Under this standard, the

Court will "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." The plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce "evidence of specific facts." *Foster-Miller, 46 F.3d at 145* (quoting *Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).* While Section 3(c) of the Massachusetts Long-Arm statute n2 arguably reaches the defendant, plaintiff fails to meet the burden of proving the due process requirements for establishing personal jurisdiction over a non-resident defendant.

> n2 [HN6] Section 3 of the Massachusetts Long-Arm statute reads in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth. . . ." *Mass. Gen. Laws ch. 223A, § 3.* The Court assumes that defendant's alleged trademark infringement would constitute a tortious injury in the Commonwealth despite the fact that the Complaint does not clearly plead the specifics of any injury.

[*8] [HN7]

Constitutional due process requires that a defendant have certain "minimum contacts" with the forum state before personal jurisdiction may be recognized so that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).* The three requirements of this "minimum contacts" test are: (1) relatedness; (2) purposeful availment; and (3) reasonableness. See *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).* A plaintiff must satisfy all three prongs of this test to meet the due process requirements. The First Circuit illuminated these prongs with a three-part analysis:

> [HN8]
> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's [*9] courts foreseeable. Third, the exercise of

> jurisdiction must, in light of the Gestalt factors, be reasonable.

*Foster-Miller, 46 F.3d at 144* (citing United Elec. Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

The purposeful availment prong of the test focuses on the deliberateness of the defendant's contacts with the forum state and requires that the contracts be voluntary, see Burger King, 471, U.S. at 474-75, and foreseeable such that the defendant could reasonably be able to anticipate "being haled into court" in the forum state. *World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).*

**B. Discussion**

The plaintiff does not satisfy the second prong of the "minimum contacts" test because it has failed to allege sufficiently the defendant's purposeful availment of the laws and privileges of the Commonwealth. The sum of defendant's contacts with Massachusetts include three web pages that are accessible from Massachusetts; a contract with a Massachusetts corporation for the sale of a domain name, which is governed by a Massachusetts choice-of-law [*10] provision but which does not contain a forum-selection clause; and a one-time, unsuccessful solicitation of a Massachusetts corporation for an internet advertisement at a price of $ 14.95/month. The plaintiff has proffered no evidence that the defendant has any Massachusetts customers or that it regularly solicits business in Massachusetts. n3 Wildfire solicited the purchase of the defendant's domain name, which resulted in the 1996 contract. Grapevine's web-pages do not directly solicit Massachusetts customers, and in fact, so far as appears from the record, Grapevine can only provide Internet service to customers in the 618 area code, which is located in southern Illinois. Massachusetts residents could theoretically purchase defendant's services off of its WakeUpMoney.com web page or utilize the free services of GolfTracker.com, but the existence of the pages alone, without any evidence of actual purchases by Massachusetts customers or direct solicitation of Massachusetts customers, is not sufficient to satisfy the "minimum contacts" required.

> n3 Though Wildfire argues that its efforts at discovery addressed to Grapevine's Massachusetts contacts have been stymied, it rather appears that Wildfire has been quiescent in seeking to pursue any further discovery.

[*11]

2001 U.S. Dist. LEXIS 18238, *

Under these facts, the Court finds that defendant has not purposefully availed itself of the laws and privileges of the Commonwealth such that it could reasonably foresee being haled into a Massachusetts courtroom. The constitutional requirements for personal jurisdiction are not satisfied, and the defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction is granted.

It is SO ORDERED.

September 28, 2001
DATE

George A. O'Toole, Jr.

DISTRICT JUDGE

LEXSEE

**JANA BRANDS, INC. v. NEXIFM, INC. d/b/a IFM INTERNATIONAL FOODS
and GUSTAVO VELA**

**CIVIL ACTION NO. 01-12320-RWZ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS**

*2003 U.S. Dist. LEXIS 862*

**January 23, 2003, Decided**

**DISPOSITION:** [*1] Defendants' motion to dismiss
allowed. Judgment entered dismissing complaint without
prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff producer of
frozen fish products, a Delaware corporation principally
based in Massachusetts, sued defendant distributors, a
Texas corporation and its owner, that purchased fish
from the producer but allegedly failed to pay for about
half of it. The distributors moved to dismiss for lack of
personal jurisdiction.

**OVERVIEW:** The contract was negotiated by parties in
several different states. The distributors used a California
food broker and negotiated with the producer's president
at its Seattle, Washington office. Although some
documents and telephone calls occurred in
Massachusetts, the court found that the producer had not
carried its burden to establish the existence of personal
jurisdiction over the defendants. By engaging in the
transaction the distributor had not purposefully availed
themselves of the privilege of conducting activities
within Massachusetts, and the claims did not relate to
such contact enough to meet the constitutional aspect of
the Massachusetts' long-arm statute, *Mass. Gen. Laws ch.
223A, § 3(a)*.

**OUTCOME:** The motion to dismiss for lack of personal
jurisdiction was allowed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal Jurisdiction*

Section Break (Continued): When a defendant contests personal jurisdiction,
the plaintiff has the burden of proof to show that
jurisdiction over the defendant is permitted. In doing so,
the plaintiff must go beyond the pleadings and make
affirmative proof.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal JurisdictionCivil
Procedure > Jurisdiction > Personal Jurisdiction & In
Rem Actions > Constitutional Limits*
[HN2] In a diversity case, personal jurisdiction over a
nonresident defendant is restricted by: (1) the forum
state's long-arm statute and (2) the Due Process Clause of
the Fourteenth Amendment.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal Jurisdiction*
[HN3] See *Mass. Gen. Laws ch. 223A, § 3(a)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > Personal JurisdictionCivil
Procedure > Jurisdiction > Personal Jurisdiction & In
Rem Actions > Constitutional Limits*
[HN4] The literal requirement of *Mass. Gen. Laws ch.
223A, § 3(a)* to establish personal jurisdiction is easily
met: a single isolated transaction, or one with little
impact on the commerce of the commonwealth suffices.
Therefore, in the ordinary case, the inquiry focuses on
the constitutional aspect of personal jurisdiction. Then
the question is whether the plaintiff's claims arise from or
relate to the defendants' contacts with Massachusetts,
which resulted from an affirmative, intentional act of the
defendant, such that it is fair and reasonable to require
the defendant to come into the State to defend the action.
It is essential in each case that there be some act by
which the defendant purposefully avails itself of the
privilege of conducting activities within the forum State,
thus invoking the benefits and protections of its laws.

**COUNSEL:** For Jana Brands, Inc, PLAINTIFF: Steven J Brooks, Deutsch, Williams, Brooks, Derensis, Holland & Drachman, Boston, MA USA.

For Nexifm, Inc, Gustavo Vela, DEFENDANTS: James M Liston, Bartlett, Hackett, Feinberg, Gentilli, Liston, Brown & Phalen, PC, Boston, MA USA.

**JUDGES:** RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** RYA W. ZOBEL

**OPINION:**

MEMORANDUM OF DECISION

January 23, 2003

ZOBEL, D.J.

Plaintiff Jana Brands, Inc., a Delaware corporation with its principle place of business in Natick, Massachusetts, produces frozen fish products. Defendant NexiFM, Inc., a Texas corporation with its principle place of business in Texas, distributes frozen foods. In 2000, defendant sought to purchase frozen seafood and contacted a food broker in California n1 who called Kevin McCarthy, Jana Brand's president, at the plaintiff's Seattle, Washington office. Negotiations for the sale continued via telephone while Mr. McCarthy was at the company's Massachusetts headquarters. During these discussions, the plaintiff requested that the broker send additional credit information for the defendant to [*2] its Washington office to be forwarded to the Massachusetts headquarters. After approval, the plaintiff's Massachusetts office faxed to defendant sales confirmations, import/export related documents and invoices.

> n1 A factual discrepancy exists between the plaintiff and the defendants as to the particular broker who contacted the plaintiff's Washington office. Where such discrepancy exists, the plaintiff's allegations will be presumed true. Here, the plaintiff has not specified the location of the broker, while the defendants have alleged that they contacted a broker in California.

In December 2000, defendant purchased three 35,200 pound containers of frozen seafood for $ 90,288 from the plaintiff. The seafood was shipped from Los Angeles, California. In January 2001, plaintiff's Massachusetts office received a payment of $ 30,976.

Thereafter, defendant Gustavo Vela, NexiFM's president and sole owner, sent three payments to the plaintiff totaling $ 15,000. Two of the payments were sent directly to plaintiff's [*3] bank at an unidentified location. Mr. McCarthy collected the third payment at defendants' Texas office. Because defendant Vela orally agreed to pay the remaining balance by the end of 2001, the plaintiff agreed not to sue. Defendant Vela called plaintiff's Massachusetts office several times to discuss the matter but did not make additional payments.

The plaintiff filed suit on December 26, 2001, alleging breach of contract, unjust enrichment, quantum meruit, and unfair and deceptive trade acts and practices under Massachusetts law. Defendants have filed a Motion to Dismiss for lack of personal jurisdiction.

[HN1] When a defendant contests personal jurisdiction, the plaintiff has the burden of proof to show that jurisdiction over the defendant is permitted. *Landmark Bank v. Machera, 736 F. Supp. 375, 380 (D. Mass. 1990).* In doing so, the plaintiff "must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)*(citations omitted.).

[HN2] In a diversity case, personal jurisdiction over a nonresident defendant is restricted by: (1) the forum state's long-arm statute and (2) the Due Process Clause [*4] of the Fourteenth Amendment. *Lyle Richards International, Ltd. v. Ashworth, 132 F.3d 111, 112 (1st Cir. 1997).* The Massachusetts' long-arm statute states that [HN3] "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth . . . ." *Mass. Gen. Laws ch. 223A, § 3.* Because jurisdiction under the statute is authorized to the limits permitted by the Constitution, the sole issue is whether Section 3(a) confers jurisdiction within its literal and constitutional boundaries. *Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 389 N.E.2d 76, 79-80 (Mass. 1979).*

[HN4] The literal requirement of the statute is easily met: a single "'isolated' transaction, or one with 'little impact on the commerce' of the commonwealth" suffices. *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 932 (1st Cir. 1985).* Therefore, in the ordinary case, the inquiry focuses on the constitutional issue. *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002).* [*5] Then the question is whether the plaintiff's claims arise from or relate to the defendants' contacts with Massachusetts, *Sigros v. Walt Disney World Co., 129 F. Supp.2d 56, 66 (D. Mass. 2001),* "which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come

into the State to defend the action." *Good Hope Industries, Inc., 389 N.E.2d at 79.* See also *Cambridge Literary Properties, Ltd., 295 F.3d at 63.* "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958).*

In the present case, the plaintiff has not carried its burden to establish the existence of personal jurisdiction over the defendants. By engaging in the instant transaction, defendants did not purposefully avail themselves of the privilege of "conducting activities within the forum State, thus invoking the benefits and protections of its [*6] laws." See *Bond Leather Co., Inc., 764 F.2d at 933* (stating that "the fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction."). Defendants' contacts with Massachusetts were fortuitous. The telephone conversations defendants' agent had with plaintiff's president while the latter was in Massachusetts and defendant Vela's subsequent calls concerning payment cannot be construed as affirmative acts whereby defendants availed themselves of the privilege of conducting activities in Massachusetts. See *Aub v. Technicolor Entertainment Services, 224 F. Supp. 2d 371, 2002 WL 31269003* (stating that the "fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that [business was transacted] *in* Massachusetts."). Furthermore, although defendants' payments were ultimately received by the plaintiff, the facts indicate that only one was sent to Massachusetts, which is insufficient to confer jurisdiction. See *'Automatic' Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 445, 280 N.E.2d 423 (Mass. 1972)* [*7] (stating that "making payments through the mail" is not a significant contact.). The only other contacts defendants had with Massachusetts did not involve an affirmative or intentional act by them; they merely received faxes from the plaintiff.

All other relevant facts occurred outside of Massachusetts. Significantly, the defendants' broker or agent initially contacted the plaintiff's Washington office and began negotiations there. Plaintiff notably had defendants' broker send the credit information to the plaintiff's Washington office. Finally, the seafood sold under the contract was shipped from California. Given the minimal contacts defendants had with the state, they could not have reasonably anticipated being haled into a Massachusetts court.

Accordingly, the defendants' Motion to Dismiss is allowed. Judgment may be entered dismissing the Complaint without prejudice.

January 23, 2003

DATE

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE

1.3

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

C

Only the Westlaw citation is currently available.

United States District Court, D. Maine.

GLOBAL HEALTH ALTERNATIVES, INC., et
al., Plaintiffs
v.
ELLON U.S.A., INC., et al., Defendants

**No. 98-365-P-C.**

March 24, 1999.

RECOMMENDED DECISION ON
DEFENDANTS' MOTIONS TO DISMISS OR
FOR CHANGE OF VENUE

COHEN, Magistrate J.

*1 The defendants, Ellon U.S.A., Inc. ("Ellon
USA"), Leslie J. Kaslof and Ralph Kaslof move to
dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2)
for lack of personal jurisdiction or pursuant to
Fed.R.Civ.P. 12(b)(3) due to improper venue. In the
alternative, they ask this court to transfer this action
to the Eastern District of New York, where their
lawsuit against the plaintiffs in this action is
currently pending. Finding that the action is subject
to dismissal under both sections of Rule 12 invoked
by the defendants, I nonetheless recommend in the
interest of justice that the court transfer this action
to the Eastern District of New York for possible
consolidation with the action pending there.

I. Applicable Legal Standards

The defendants seek dismissal pursuant to
Fed.R.Civ.P. 12(b)(2) and (3). A motion to dismiss
for lack of personal jurisdiction raises the question
whether the controversy or the defendant has
sufficient contact with the forum to give the court
the right to exercise judicial power over the

defendant. *See, e.g., Hancock v. Delta Air Lines,
Inc.,* 793 F.Supp. 366, 367 (D.Me.1992). The
burden is on the plaintiff to establish jurisdiction,
*Talus Corp. v. Browne,* 775 F.Supp. 23, 25
(D.Me.1991), but where, as here, the court rules on
the Rule 12(b)(2) motion without holding an
evidentiary hearing, a *prima facie* showing is
sufficient, *Nowak v. Tak How Invs., Ltd.,* 94 F.3d
708, 712 (1st Cir.1996) (*prima facie* standard
preferred where jurisdictional facts are undisputed);
*Archibald v. Archibald,* 826 F.Supp. 26, 28
(D.Me.1993). For the purposes of such a review,
the plaintiffs may not rely on unsupported
allegations in their pleadings to make the *prima
facie* showing. *Boit v. Gar-Tec Prod., Inc.,* 967
F.2d 671, 675 (1st Cir.1992). The court accepts
properly supported proffers of evidence by a
plaintiff as true. *Boit,* 967 F.2d at 675.

A motion to dismiss for lack of venue under Rule
12(b)(3) puts the burden on the plaintiff to
demonstrate that it has met its obligation to institute
its action in a permissible forum. 5A C. Wright &
A. Miller, *Federal Practice and Procedure* § 1352
at 264-65 (2d ed.1990). The procedure for analysis
of such a motion is the same as that for a motion
under Rule 12(b)(2). *M.K.C. Equipment Co. v.
M.A.I.L.Code, Inc.,* 843 F.Supp. 679, 682-83
(D.Kan.1994).

II. Factual Background

The following facts are relevant to consideration of
the pending motions. The plaintiffs are two
Delaware corporations. Complaint (Docket No. 1)
¶¶ 1-2; Declaration of Ralph Kaslof ("Ralph
Dec.") (Docket No. 5) ¶ 16. Plaintiff Global
Health Alternatives, Inc. ("GHA") has its principal
place of business in Portland, Maine. Complaint ¶
1. Plaintiff Ellon, Inc. is a wholly-owned subsidiary
of GHA. Complaint ¶ 2; Ralph Dec. ¶ 5.
Defendant Ellon USA is a New York corporation
that formerly had a principal place of business in
Lynbrook, New York. Complaint ¶ 3; Ralph Dec.
¶ 2. It was owned by the individual defendants,
both of whom are citizens of New York. Complaint

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

Page 2

¶¶ 4-5; Ralph Dec. ¶ 2; Declaration of Leslie J. Kaslof ("Leslie Dec.") (Docket No. 6) ¶ 1. [FN1] Ellon USA has been inactive since October 15, 1996, when its assets were sold to the plaintiffs. Leslie Dec. ¶ 1.

> FN1. The plaintiffs have moved to strike the declarations of Ralph and Leslie Kaslof on the grounds that (i) they do not contain jurats, making anything stated therein inadmissible because not given under oath and (ii) "material portions" of the declarations are not based on the declarants' personal knowledge, contain statements that the declarants are not competent to make, and state facts not admissible in evidence. Plaintiff's [sic] Motion to Strike the Declarations of Defendants Ralph and Leslie Kaslof (Docket No. 9) at 2. The declarations at issue each state, in the first paragraph, that the declarant "affirms the truth of the following under the penalty of perjury." Ralph Dec. at 1; Leslie Dec. at 1. Unsworn declarations made under penalty of perjury are acceptable "with like force and effect" as sworn declarations by virtue of 28 U.S.C. § 1746. *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.,* 982 F.2d 686, 689-90 (1st Cir.1993). While the declarations at issue here do not use the form set forth in the statute, they are "in substantially the [same] form," which is all that the statute requires. 28 U.S.C. § 1746; *see also Kersting v. United States,* 865 F.Supp. 669, 676 (D.Haw.1994). The declarations are not submitted in connection with a motion for summary judgment and therefore the requirements of Fed.R.Civ.P. 56(e), the authority upon which the plaintiffs rely, are not applicable. Some of the alleged defects in the declarations identified by the plaintiffs have been remedied by the supplemental declaration filed by Leslie Kaslof. Supplemental Affirmation of Leslie J. Kaslof in Further Support of Motion to Dismiss, etc. (Docket No. 12). The motion to strike is denied. My recommended decision does not rely

> on any statements included in these declarations other than those identified in the text.

**\*2** On or about October 15, 1996 GHA and Leslie Kaslof entered into a written employment agreement and GHA and Ralph Kaslof entered into a written consulting agreement. Complaint ¶¶ 10, 18. Some, but not all, of the payments that appear on the face of the agreements to have been due, Ralph Dec. ¶¶ 27- 31, 34, 37-38; Leslie Dec. ¶¶ 5, 9, 11, have been made, Complaint ¶¶ 14, 21. The plaintiffs allege that Ralph and Leslie Kaslof have breached these agreements; the defendants allege that the plaintiffs have breached them. [FN2] The complaint in this action was filed on October 27, 1998, but not served on defendants Ralph Kaslof and Ellon USA until December 3, 1998. Affidavits of Service. Service was made upon Leslie Kaslof on November 24, 1998 by delivery to the receptionist at the building where he resides. Affidavit of Service. [FN3]

> FN2. The only claim made against Ellon USA in the complaint--also asserted against the individual defendants--is for indemnification under the asset purchase agreement between the plaintiffs and the defendants, also dated October 15, 1996, for losses arising out of the alleged breaches by the individual defendants of the employment and consulting agreements. Complaint ¶¶ 30-33.

> FN3. Ralph Kaslof disputes the dates of service contained in the affidavits of the person who made service. He states that Leslie Kaslof was served on December 4, 1998 and that he and Ellon USA were served on December 7, 1998. Ralph Dec. ¶ 6.

On December 4, 1998 the defendants in this action filed suit in the United States District Court for the Eastern District of New York against the plaintiffs in this action. Complaint, *Leslie J. Kaslof, et al. v. Global Health Alternatives, Inc., et al.,* Docket No.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
(Cite as: 1999 WL 33117099 (D.Me.))

98-7477 (Schedule I to Ralph Dec.) at 1. The complaint alleges breach of the written agreements at issue in the instant action, fraud, unjust enrichment, and abuse of process. *Id.* at 10-14. GHA has moved to dismiss the New York action, primarily on the ground that the instant action was filed first. [FN4] Defendants' Memorandum in Support of Motion to Dismiss or, Alternatively, Stay Case or Transfer Venue Thereof Pursuant to Prior Action Pending Rule, excerpts attached as Exhibit III to Affirmation of Michael R. Perle (Docket No. 13), at 1, 6-7.

> FN4. GHA's dismissal motion and supporting memorandum have been served on the plaintiffs in the New York action (the defendants here) even if not yet formally filed with that court. The district judge to whom the case is assigned is nevertheless aware of the motion papers. *See* Report of Conference of Counsel and Order (Docket No. 14); letter from Michael R. Perle, Esq. to this court dated March 18, 1999; and Transcript of Proceedings Before the Honorable Eugene H. Nickerson, *Kaslof v. Global Health,* Docket No. 98 Civ. 7477, United States District Court, Eastern District of New York (March 18, 1999), copy attached to letter from Robert J. Keach, Esq. to this court dated March 23, 1999.

The agreements at issue are governed by New York law. Employment Agreement (Exh. A to Complaint) ¶ 12; Consulting Agreement (Exh. B to Complaint) ¶ 9. They were negotiated in New York. Ralph Dec. ¶ 18. The consulting agreement also includes a clause waiving objection to personal jurisdiction in any state or federal court in New York. Consulting Agreement ¶ 9. Both agreements give a London address for GHA and require written notification of a change in address. *Id.* ¶ 13; Employment Agreement ¶ 16. Neither Leslie nor Ralph Kaslof ever received any notification of a change in this address. Leslie Dec. ¶ 7. The parties have attended two mediation sessions in New York concerning the agreements at issue. Ralph Dec. ¶ 10. These sessions were held in late 1997 and were initiated by an attorney representing GHA and

Ellon, Inc. *Id.* The mediation was unsuccessful. "[J]ust weeks prior to this Maine court action," Leslie Kaslof made another settlement proposal to the chairman of GHA. Leslie Dec. ¶ 12. During what was apparently the last of the ensuing discussions, Leslie Kaslof told the chairman of GHA that "barring settlement ... Ralph and I would have to take legal action." *Id.* Leslie Kaslof was served with the complaint in this action within two weeks thereafter. *Id.*

*3 Prior to October 1996 GHA's principal place of business was located in London, England. Affidavit of John Eldredge ("Eldredge Aff.") (Docket No. 8) ¶ 2. On or about October 15, 1996, at approximately the same time that it acquired the assets of Ellon USA, GHA, through its subsidiary Ellon, Inc., also acquired the assets of Downeast Cranberry Company, Inc., the principal place of business of which was located in South Portland, Maine. *Id.* ¶ 3. GHA established its principal place of business in South Portland, Maine at some time thereafter, although its chairman continued to work out of the London, England office. *Id.* ¶ 6. In or about August 1997 Ellon, Inc. closed the business location in Lynbrook, New York that it had taken over from Ellon USA and thereafter operated from a location in Portland, Maine. Eldredge Aff. ¶ 7; Ralph Dec. ¶ 50; Leslie Dec. ¶ 8. Leslie and Ralph Kaslof contacted officers of Ellon, Inc. and GHA in Maine by letter and telephone in efforts to obtain payment under the agreements at issue and, in the case of Leslie Kaslof, to obtain work assignments. Eldredge Aff. ¶¶ 8-9; Leslie Dec. ¶ ¶ 5-7. Ellon USA received some inventory from Ellon, Inc. after August 31, 1997. Eldredge Aff. ¶ 11. Neither Ralph nor Leslie Kaslof went to Maine to deal with either of the plaintiffs. Ralph Dec. ¶¶ 44-46; Leslie Dec. ¶ 2. Ralph Kaslof states that he is physically unable to travel to Maine. Ralph Dec. ¶ 4.

### III. Discussion
#### A. Personal Jurisdiction

In this case in which the court's jurisdiction is based upon the diverse residence of the parties, the court's personal jurisdiction over a non-resident defendant is governed by the forum state's long-arm jurisdiction statute. *American Express Int'l, Inc. v. Mendez-Capellan,* 889 F.2d 1175, 1178 (1st

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

Page 4

Cir.1989). Maine's long-arm jurisdiction statute, which declares that it is to be applied "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704-A(1), provides, in relevant part:

2. Causes of action. Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing to any of such acts:

A. The transaction of any business within this State;

B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State;

C. The ownership, use or possession of any real estate situated in this State;

\* \* \*

F. Contracting to supply services or things within this State;

\* \* \*

H. Acting as a director, manager, trustee or other officer of a corporation incorporated under the laws of, or having its principal place of business within, this State[;]

*4 I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

\* \* \*

4. Jurisdiction based upon this section. Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

14 M.R.S.A. § 704-A.

A court may have general or specific personal jurisdiction over the defendants in an action. General jurisdiction arises when the defendant has engaged in substantial or systematic and continuous activity, unrelated to the subject matter of the action, in the forum state. *Scott v. Jones,* 984 F.Supp. 37, 43 (D.Me.1997). Specific jurisdiction is based on a relationship between the forum and the particular acts or injuries that provide the basis for the action, that is, "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec ., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088-89 (1st Cir.1992). The Maine long-arm statute provides only for the exercise of specific jurisdiction, *Lorelei Corp. v. County of Guadalupe,* 940 F.2d 717, 720 (1st Cir.1991), and the plaintiffs here have disavowed any intention to assert general jurisdiction, Objection of Global Health Alternatives, Inc. and Ellon, Inc. to Defendants' Motion to Dismiss ("Plaintiffs' Obj.") (Docket No. 7) at 5 n. 2.

The First Circuit has developed the following test to evaluate the exercise of specific jurisdiction:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state activities must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*163 Pleasant St.,* 960 F.2d at 1089. The "Gestalt factors" include

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 1088.

The claims asserted in the complaint are that Leslie Kaslof breached the employment agreement (Count I), Ralph Kaslof breached the consulting agreement (Count II), Ralph Kaslof breached his fiduciary duty as a director of Ellon, Inc. by sexually harassing one of its employees (Count III) and Ellon USA, Leslie Kaslof and Ralph Kaslof must indemnify the plaintiffs under the asset agreement

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

Page 5

for any losses incurred by the plaintiffs in connection with Counts I-III (Count IV). Complaint ¶¶ 9-33. The plaintiffs do not seriously contend that any of the claims in the first three counts directly arose out of the defendants' contacts with Maine, which were limited to Ralph and Leslie Kaslof's letters and telephone calls demanding work and payment and Ellon USA's receipt of inventory shipped from Maine after August 3, 1997, following communication between GHA's officers and Maine and the individual defendants "concerning the liquidation of the inventory." Eldredge Aff. ¶ 11. They rely instead on the assertion that these contacts were "related to" their claims because they "arise out of" the contracts that form the basis of their claims. Plaintiffs' Obj. at 5. They rely solely on *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir.1994), as authority for their position.

**\*5** *Pritzker* is readily distinguishable from the instant case. There, the contract at issue, while executed outside Puerto Rico by defendants who were not residents of Puerto Rico, concerned the purchase of an interest in litigation proceeding in the District of Puerto Rico. *Id.* at 59 n. 4. While finding in a summary fashion that the contract, "the very document that represents [the defendant's] forum-related activity[,] is itself the cause and object of the lawsuit," making a dispute over the legal status of the contract "related to" Puerto Rico, *id.* at 61, the First Circuit also stated that "[a] contract conferring an interest in ongoing litigation that touches upon the legal status of real property situated in the forum establishes, by its very nature, a significant relationship with the forum and its legal system," *id* . at 63. Here, the contracts at issue, negotiated in New York at a time when none of the parties was a resident of Maine, contemplated personal services to be performed, when any location was specified, in New York. [FN5] Employment Agreement ¶ 1; Consulting Agreement ¶ 1. The contracts do not concern real property or litigation in Maine.

> FN5. The employment agreement provides that Leslie Kaslof "shall work at his home office and go, as needed, to the principal office of the Company located in or near Lynbrook, New York or at such other location in or near the New York, New

York metropolitan area as the Board of Directors, in its discretion, may select. However, [Leslie Kaslof] shall also render services at such other place or places within or without the United States as the Board of Directors may direct from time to time." Employment Agreement ¶ 1. The consulting agreement provides that Ralph Kaslof "agrees to be physically present at the executive offices of New Ellon (on Long Island, New York), at such times, as New Ellon, the Company and/or the Board of Directors, Chairman or President of either may reasonably request...." Consulting Agreement ¶ 1.

The facts here are quite different from those in *Pritzker* and other First Circuit authority is more directly applicable. While the transmission of information by telephone or mail into the forum state is a contact for purposes of personal jurisdiction analysis, *Sawtelle v. Farrell,* 70 F.3d 1381, 1389- 90 (1st Cir.1995), those communications must not be ancillary to the plaintiffs' claims in order that they form the basis for the exercise of personal jurisdiction. Rather, they must "form an important or [at least] material, element of proof in the plaintiff's case." *163 Pleasant St.,* 960 F.2d at 1089 (internal quotation marks and citation omitted). Here, it is readily apparent that the plaintiffs may prove the alleged breaches of contract by Leslie and Ralph Kaslof without reference to the Kaslofs' calls or letters to GHA in Maine. Ralph Kaslof's alleged breach of fiduciary duty could only have occurred outside Maine, as the plaintiffs have made no showing that either he or the Ellon, Inc. employee he is alleged to have sexually harassed has ever been in Maine. [FN6] *See* Affirmation of Lorraine Lanzilotta, Exh. I to Perle Aff., & Ralph Aff. ¶ 44. In addition, "in a contract case, the defendant's forum-based activities must be instrumental in the formation of the contract," *163 Pleasant St.,* 960 F.2d at 1089 (internal quotations marks and citation omitted), a factor clearly not present here, where the contract was formed in New York without any apparent mention of Maine.

> FN6. This fact also makes specific

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
(Cite as: 1999 WL 33117099 (D.Me.))

personal jurisdiction over Count III untenable under Maine's long-arm jurisdiction statute. While the complaint sufficiently alleges that Ralph Kaslof was a director of Ellon, Inc. when he committed the harassment that is alleged to have constituted a breach of his fiduciary duty, the Maine statute requires that a cause of action arise from his acting as a director. 14 M.R.S.A. § 704-A(2)(H) & (4). There is no sense in which sexual harassment of an employee is within the scope of the actions of a director of a corporation. Significantly, the allegation is one of breach of the duties of that position. In addition, the commission outside the forum state of an act that may have consequences inside the forum state is by itself an insufficient contact to establish personal jurisdiction under the Maine statute. *Lorelei Corp.*, 940 F.2d at 721.

I conclude that the plaintiffs have not met the "relatedness" requirement for the exercise of this court's personal jurisdiction over the defendants. Even if that were not the case, the plaintiffs have also failed to establish a *prima facie* case of purposeful availment by the defendants, that is, that their contacts with Maine were not based on the unilateral actions of another party or third person and that the contacts were such that the defendants should reasonably anticipate being held into a Maine court. *Nowak* 94 F.3d at 716. The defendants' contacts with Maine occurred only because the plaintiffs unilaterally chose to move their operations to Maine after the contracts at issue were executed. The defendants had to contact the plaintiffs in order to attempt to receive payment under the contracts or to arrange for recovery of inventory. [FN7] The plaintiffs moved to Maine, and the defendants therefore could only contact them in Maine. That appears to be the classic case of the contacts at issue for personal-jurisdiction analysis being based on the unilateral actions of a party other than the defendants.

FN7. Because the claim against Ellon USA as set forth in Count IV is only derivative of the other counts, the court need not

consider the contacts of Ellon USA with Maine in this analysis.

*6 Because the plaintiffs have demonstrated neither relatedness nor purposeful availment, it is unnecessary to consider the reasonableness of this court's exercise of personal jurisdiction over the defendants in this case, although a consideration of the gestalt factors, on balance, would lead me to the conclusion that exercise of this court's personal jurisdiction would not be reasonable under the circumstances presented. The defendants are entitled to dismissal of this action under Rule 12(b)(2).

B. Venue

I also conclude that the defendants are entitled to dismissal of this action on the ground that venue in this court is not proper. Venue is governed by 28 U.S.C. § 1391, which provides in relevant part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is not district in which the action may otherwise be brought.

The plaintiffs obviously have not brought this action in the district in which the defendants reside. The action could have been brought in the appropriate judicial district in New York, so subsection (3) does not apply. There is no property that is the subject of this action. Accordingly, the plaintiffs can only be proceeding under that portion of subsection (2) that makes venue proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

The plaintiffs contend that the communications transmitted into Maine by Leslie and Ralph Kaslof satisfy the standard of subsection (2). Plaintiffs' Obj. at 9. They also rely on GHA's payments to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

Page 7

Leslie and Ralph Kaslof from its Maine office. The case law upon which the plaintiffs rely is distinguishable. In *ESI, Inc. v. Coastal Power Prod. Co.,* 995 F.Supp. 419 (S.D.N.Y.1998), the court held that "[v]enue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere." *Id.* at 425. Here, the contracts at issue were negotiated in New York, and there is no indication in the record that they were not drafted and executed there as well. There is certainly no suggestion in the record that they were drafted or executed in Maine. The *ESI* court based its holding that venue was proper in the Southern District of New York on the ground that the contracts at issue were substantially negotiated in that district, *id.,* and so is of limited value for the case presented here. I do note, however, that any breaches of the contracts at issue by the Kaslofs could only have taken place outside Maine, and that the only specific location for performance by the Kaslofs contemplated in the contracts at issue was New York.

\*7 In *Neill v. Laifer,* 1996 WL 460076 (E.D.Pa.1996), the allegation at issue was one of intentional interference with prospective contractual relationships. *Id.* at \*1. The mechanism of interference was correspondence from the defendant, who was outside the forum, to the plaintiff in the forum. *Id.* at \*2. The court held that this correspondence formed a substantial part of the events giving rise to the claim and that its direction to the forum district was sufficient for purposes of venue. *Id.* Here, the correspondence from Ralph and Leslie Kaslof directed to the plaintiffs in Maine did not itself constitute a breach of either of the contracts; the alleged breach was their failure to perform. The correspondence itself, unlike that in *Neill,* does not give rise to the claim.

The final case upon which the plaintiffs rely is *F.A.I. Elec. Corp. v. Chambers,* 944 F.Supp. 77 (D.Mass.1996). In that case, a Massachusetts corporation contracted with the defendants as employees in Colorado and Texas. *Id.* at 79. The contracts included non-competition agreements. *Id.* The corporation sued in the federal district court in Massachusetts, alleging breach of the agreements. *Id.* The court decided that venue in Massachusetts

was not improper, relying on its finding that the defendants had substantial contacts with Massachusetts sufficient to support the exercise of personal jurisdiction over them. *Id.* at 80. While all of the factors upon which the court relied in this regard may not be set forth in the opinion, *id.,* those listed include the fact that the defendants entered into contracts with the plaintiff knowing it to be a Massachusetts corporation; they placed orders that were processed, distributed and administered in Massachusetts; and the plaintiff paid their salary and benefits and administered their benefit plans, presumably from Massachusetts, *id.* Of these facts, the only one in common with the facts in the case at hand is that one or both of the plaintiffs made some payments of salary, benefits or consulting fees to each of the defendants after the plaintiffs had moved to Maine, but other payments were made from their earlier offices in New York. That fact alone is not a sufficient basis for venue under section 1391(a)(2). The plaintiffs' payments to the defendants are not the events that give rise to the plaintiffs' claims of breach. At most, they provide the basis for some portion of the plaintiffs' damages claims.

Accordingly, the defendants are also entitled to dismissal of this action due to improper venue. *See, e.g., Rosenfeld v. S.F.C. Corp.,* 702 F.2d 282, 284 (1st Cir.1983); *Tischio v. Bontex, Inc .,* 16 F.Supp.2d 511, 516-17 (D.N.J.1998).

C. Transfer to the Eastern District of New York

The defendants seek transfer of this action to the Eastern District of New York only in the event that their motion to dismiss is not granted. Defendants' Motions, etc. (Docket No. 4) at 1; Defendants' Mem. at 20. The plaintiffs' opposition to the request for transfer assumes that the motion to dismiss will not be granted. Plaintiffs' Obj. at 10-12. To that end, the plaintiffs refer only to 28 U.S.C. § 1404(a), which allows a district court to transfer an action "for the convenience of parties and witnesses, in the interest of justice." More appropriate under the circumstances present here, where I have concluded that venue is improper in this district, is 28 U.S.C. § 1406(a), which provides:

   \*8 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 33117099 (D.Me.)
**(Cite as: 1999 WL 33117099 (D.Me.))**

Page 8

justice, transfer such case to any district or division in which it could have been brought.
The parties do not dispute that this action could have been brought in the Eastern District of New York. [FN8]

> FN8. The plaintiffs based their argument opposing transfer in large part on the "first to file" rule, under which the earlier filed of two cases involving the same parties and the same subject matter is to be preferred. Application of this rule would make no sense where the court in which the earlier filing takes place has no personal jurisdiction over the defendants or is one in which venue is not proper. Even if that were not the case, the First Circuit has noted that "[w]hile the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound." *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir.1977).

The decision whether to dismiss an action or transfer it under these circumstances is within the sound discretion of the district court. *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 262 (6th Cir.1998); *see Freund v. Fleetwood Enter., Inc.,* 745 F.Supp. 753, 755 (D.Me.1990). The court may also transfer this action in the absence of personal jurisdiction over the defendants. 28 U.S.C. § 1631. Because there is no indication in the materials submitted to the court in connection with the pending motion that the action currently pending in the Eastern District of New York includes either the breach-of-fiduciary-duty claim or the indemnification claims asserted here by the plaintiffs, and because the breach of contract claims asserted here may serve in some sense as defenses to the claims of breach raised in the New York action by the Kaslofs, *see generally* Complaint and Jury Demand, *Leslie J. Kaslof, et al. v. Global Health Alternatives, Inc., et al.,* Civil Action No. 98-7477, United States District Court, Eastern District of New York, Schedule I to Ralph Dec., I conclude that transfer of this action to the Eastern District of New York, rather than dismissal, would

best serve the interest of justice.

### IV. Conclusion

For the foregoing reasons, I recommend that this action be transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1406(a) and/or 1631. If the court declines to adopt this recommendation, I recommend in the alternative that the defendants' motion to dismiss for lack of personal jurisdiction and improper venue be GRANTED.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

FOCUS - 12 of 32 DOCUMENTS

PAUL S. DOPP, Plaintiff, v. TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA, NORTH COAST INVESTMENT
CORPORATION, CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
and DORADO BEACH HOTEL CORPORATION, Defendants.

CIVIL NO. 91-1494 (GG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

*1992 U.S. Dist. LEXIS 6833*

March 31, 1992, Decided
April 2, 1992, Filed

DISPOSITION: [*1] GRANTED. DIRECTED Section Break (Continuous)
TRANSFER.

CASE SUMMARY:

PROCEDURAL POSTURE: Defendants, an annuity
corporation, an insurance company, and an investment
corporation, filed a motion to transfer an action for
breach of contract to one of two more convenient district
courts.

OVERVIEW: Plaintiff assignee filed an action against
defendants for breach of contract, breach of the covenant
of good faith, and breach of fiduciary duty. Defendants
sought to transfer the action to a court that was more
convenient to the parties. The court granted the motion to
transfer. None of the parties were residents of the
original forum. The transfer was a more convenient
forum for all parties but one. Any witnesses that would
be called would be closer to the transferred forum than to
the original forum. Defendant officers were within
commuting distance of the transferred forum so that
relevant documents would be more accessible if the case
were transferred. The court rejected plaintiff's claims that
the contract at issue was governed by the law of the
original forum because the contract contained a choice of
law clause that rejected such governance. The court also
found meritless plaintiff's claim that he would lose the
benefits of his counsel if this case were transferred.

OUTCOME: The court granted defendants' motion for
change of venue and directed the clerk of court to
transfer the matter to the transferred forum.

LexisNexis(R) Headnotes

*Civil Procedure > Venue > Change of Venue in
Federal Courts*
[HN1] A district court is authorized, pursuant to *28
U.S.C.S. § 1404*(a), to transfer a civil action to any other
district where it originally might have been brought, for
the convenience of parties and witnesses, and in the
interest of justice.

*Civil Procedure > Venue > Change of Venue in
Federal Courts*
[HN2] *28 U.S.C.S. § 1404*(a) provides that for the
convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to
any other district or division where it might have been
brought.

*Civil Procedure > Venue > Change of Venue in
Federal Courts*
[HN3] Relevant factors a district court should consider in
determining whether to transfer a civil action are: the
convenience of the parties and witnesses, the order in
which jurisdiction was obtained by the district court, the
availability of documents, and the possibilities of
consolidation. The movant must also show by a
preponderance of the evidence that the trial will more
conveniently proceed and the ends of justice will be
better served by a transfer.

*Civil Procedure > Venue > Change of Venue in
Federal Courts*
[HN4] A transfer is particularly appropriate when the
plaintiff is not a resident of the selected forum, and
another forum would be more convenient for the other
parties and no less convenient for the plaintiff.

**COUNSEL:** Attorney for Plaintiff, RUBEN I. NIGAGLIONI, LEDESMA, PALOU & MIRANDA, Banco de Ponce Bldg., Suite 1103, Hato Rey, P.R. 00918.

Attorneys for Defendant, RAFAEL PEREZ BACHS, McCONNELL, VALDES SIFRE, KELLEY, G.P.O. Box 4225, San Juan, P.R. 00936. ERIC H. QUEEN & CHARLES KING (PHV), FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, One New York Plaza, New York, NY 10004. RAFAEL PEREZ BACHS, G.P.O. Box 4225, San Juan, P.R. 00936. SALVADOR ANTONETTI, JAY A. GARCIA GREGORY, FIDDLER, GONZALEZ & RODRIGUEZ, P.O. Box 363507, San Juan, P.R. 00936-3507. MARTINEZ LOPEZ, MARIA L. LASA, ESCALERA & REICHARD, G.P.O. Box 4148, San Juan, P.R. 00934.

**JUDGES:** GIERBOLINI

**OPINIONBY:** GILBERTO GIERBOLINI

**OPINION:**

*OPINION AND ORDER*

Co-Defendants Teachers Insurance and Annuity Association of America ("TIAA" or "Teachers"), Connecticut General Life Insurance Company ("CG") and North Coast Investment Corporation ("North Coast") have moved to transfer this action, pursuant to *28 U.S.C. § 1404*(a), to the United States District Court for the Southern District of New York, or, alternatively, to the United States District Court for the District of Connecticut. For the reasons set forth below, the lotion for change [*2] of venue is GRANTED, and the Clerk of the Court is DIRECTED TO TRANSFER this action to the Southern District of New York.

*BACKGROUND*

Plaintiff Paul S. Dopp is a resident of the State of New Jersey, who lives in Basking Ridge, New Jersey, a town in the New York City metropolitan area. He sues as the "successor and assignee" of Code Hospitality Group, Inc. ("Code"), a Delaware corporation whose principal place of business is also in New Jersey.

Defendant TIAA is a New York corporation whose principal place of business is located in New York, New York. North Coast is a Delaware corporation whose principal place of business is also located in New York City. Co-defendant CG is a Connecticut corporation whose principal place of business is located in Bloomfield, Connecticut, a city within commuting distance of New York, New York. n1 TIAA and CG are the sole stockholders of North Coast.

n1 There is one additional nominal defendant who was also a party to the contract plaintiff Dopp sues under, Dorado Beach Hotel Corporation ("DBHC"), a Delaware corporation whose principal place of business resides in Illinois, which claims that there are no allegations of wrongdoing involving them or any prayer for relief stated in the complaint.

[*3]

This action arises out of a contract dated May 9, 1984, between Code, North Coast, and DBHC, under which contract, Code contracted to buy the stock or assets of DBHC. Dopp alleges that by late November 1984, Code had commenced negotiations with Jay Pritzker, an Illinois investor, to provide financing for the acquisition. Dopp then alleges that these negotiations stalled, just before a crucial December 3, 1984 deadline for closing, which if missed, would cause Code to lose substantial sums of money. Plaintiff further alleges that TIAA and CG, who together "totally controlled and dominated" North Coast, commenced "secret negotiations" with Pritzker for the sale of DBHC to Pritzker notwithstanding the contract between Code, North Coast and DBHC, and likewise notwithstanding their having been previously warned by Dopp that he was negotiating with Pritzker to obtain the financing that Code needed. These secret negotiations allegedly resulted in Code entering into a "most unfavorable" agreement with Pritzker, under which Code became a 12% minority shareholder in Pritzker's HTP Corporation ("HTP"). n2 The codefendants' alleged wrongful conduct, according to Dopp, constituted a breach of [*4] contract; a breach of a good faith covenant to Code; and a breach of fiduciary duty to Code and its assignee. Dopp seeks monetary damages of "at least" $ 25,000,000.

n2 HTP, with Code as a shareholder, ultimately purchased at least a controlling portion of DBHC's stock.

Mr. Philip DiGennaro, the principal TIAA participant, lives in Connecticut, and works in New York, New York. Mr. Alan Stefanik, the principal CG participant, lives in Connecticut. The parties agree that Pritzker is in Illinois. There is no allegation that the alleged secret negotiations took place in Puerto Rico, or that there are any Puerto Rico witness who could substantiate these allegations.

In their motion to transfer, Connecticut, Teachers, North Coast and CG assert, inter alia, that Dopp, a New

Jersey resident, in an action where there appear to be no witnesses in Puerto Rico, has made an extraordinary detour to come all the way to Puerto Rico to litigate in federal court here. They further assert that either New York or Connecticut would provide [*5] a much more appropriate forum, stating that either would be more convenient for co-defendants and their witnesses, that transferring the action would not cause any particular hardship for Dopp, since he himself resides in the greater New York City metropolitan area.

## DISCUSSION

[HN1] A district court is authorized, pursuant to 28 U.S.C. § 1404(a), n3 to transfer a civil action to any other district where it originally might have been brought, for the "convenience of parties and witnesses", and "in the interest of justice."

n3 [HN2] 28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In *Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7 (1st Cir. 1987),* our First Circuit listed [HN3] relevant factors a district court should consider in determining whether to transfer a civil action as:

The convenience of the parties and witnesses, the order in [*6] which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation.

*Id. at 11,* citing *Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977),* cert. denied, *434 U.S. 860 (1977).* See also *Modas Ana Representations, Inc. v. Rosenthal & Rosenthal, Inc., 294 F. Supp. 929, 930 (D.P.R. 1969).*

The movant must also show by a preponderance of the evidence that the "trial will more conveniently proceed and the ends of justice will be better served by a transfer." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 3848 at 383 (1986).

Certain criteria listed above are not applicable to this case. The criteria which are applicable, clearly indicate that a transfer to New York is warranted.

## CONVENIENCE OF PARTIES

None of the parties in this case are residents of Puerto Rico. New York would be a more convenient forum for all parties but DBHC. n4 Plaintiff Dopp and all

parties except DBHC are all within commuting distance to the Southern District of New York. If the case is tried in Puerto Rico, all parties [*7] presumably will incur additional expenses in air fares, hotel bills, ground transportation, meals and similar travel expenses, than would be the case with a New York trial.

n4 The nominal defendant, DBHC, has its principal place of business in Illinois. If DBHC remains in this action, litigating in New York will cause DBHC no greater hardship than litigating in Puerto Rico.

[HN4] A transfer is particularly appropriate when, as here, the plaintiff is not a resident of the selected forum, and another forum would be more convenient for the other parties and no less convenient for the plaintiff. See *Matra Et Manuhrin v. International Armament Co., 628 F. Supp. 1532, 1535 (S.D.N.Y. 1986)* ("the convenience of the parties tips in favor of a transfer insofar as the convenience of one party at least will be served by a transfer while the other parties will not be inconvenienced if the motion to transfer is granted"); See also, Wibau, *Westdeutsche Industrie Und Strassenbaumachinegesellschaft v. American Hoist & Derrick Co., 293 F. Supp. 273, 274-275 (S.D.N.Y. 1968)* [*8] (court granted defendant's transfer motion because either forum was inconvenient for plaintiff, but transferee forum was more convenient for defendant).

## CONVENIENCE OF WITNESSES

Testimony with respect to the formation and intent of the contract is likely to come from Dopp (a New Jersey resident), who signed the contract for Code; DiGennaro (a Connecticut resident), who signed it for DBHC; and Stefanik (a Connecticut resident), who signed it for North Coast. Similarly, any testimony regarding "secret negotiations," would presumably come from DiGennaro, Stefanik, and Pritzker (an Illinois resident). No good reason has been shown for requiring all of these witnesses to come to Puerto Rico for a trial.

The absence of Puerto Rico witnesses favors the New York forum. Plaintiff Dopp has failed to identify a single potential witness who resides in Puerto Rico, who would be inconvenienced more by transferring the action to New York from Puerto Rico.

## THE AVAILABILITY OF DOCUMENTS

Since Teachers, CG and North Coast all h[ave] offices either in New York or within commut[ing] of New York, and the relevant documents ar[e] those offices, these documents obviously [*9] more accessible for a New York trial than